**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ARTURO ALBINO-LOE,
*Defendant-Appellant*.

No. 12-50428

D.C. No.
3:11-cr-03935-
WQH-1

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
February 5, 2014—Pasadena, California

Filed April 7, 2014

Before: Mary M. Schroeder and Richard R. Clifton, Circuit
Judges, and John R. Tunheim, District Judge.[*]

Opinion by Judge Clifton

---

[*] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed a conviction and sentence for being a deported alien found in the United States.

The panel held that the statements made in a Notice to Appear, the document filed by the government to initiate removal proceedings, are not testimonial, and that admission of the Notice at trial therefore did not violate the defendant's rights under the Confrontation Clause.

The panel rejected the defendant's Confrontation Clause challenge to the admissibility of certifications of authenticity for the defendant's A-File documents, held that an erroneous in-court identification of the defendant was harmless, and concluded that a Border Patrol agent's testimony regarding Form I-212 did not affect the defendant's substantial rights.

The panel held that the district court did not err in imposing an enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) on the ground that the defendant's prior California convictions for attempted murder and kidnaping qualified as crimes of violence under the categorical approach, notwithstanding variations between California and other jurisdictions as to the availability of an affirmative defense of voluntary abandonment. The panel explained that this court's previous holdings that a variation in affirmative defenses does not affect whether a conviction qualifies under

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the categorical approach remain valid after *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013).

## COUNSEL

Kent D. Young, Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, and A. Dale Blankenship (argued), Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

CLIFTON, Circuit Judge:

Defendant-Appellant Arturo Albino-Loe was convicted by jury trial of being a deported alien found in the United States. He raises various evidentiary and Confrontation Clause challenges to his conviction and a challenge to the imposition of a sentencing enhancement for a prior crime of violence. We affirm.

In challenging his conviction, Albino-Loe contends, among other things, that the admission into evidence during his criminal trial of a Notice to Appear, the document filed by the government to initiate removal proceedings before an immigration judge, violated his rights under the Confrontation Clause. We disagree, concluding that the statements made in a Notice to Appear are not testimonial.

In addition, Albino-Loe argues that the district court erred in calculating the advisory range under the Sentencing Guidelines by applying an enhancement for a previous conviction for a crime of violence. Albino-Loe does not dispute that he was previously convicted of attempted murder and kidnaping under California law. He contends, however, that those California convictions should not qualify as crimes of violence under the applicable categorical approach because California does not provide for an affirmative defense of voluntary abandonment to a charge of attempt, though that defense is available in most jurisdictions and under the Model Penal Code. Albino-Loe acknowledges that our court has previously held that a variation in affirmative defenses does not affect whether a conviction qualifies under the categorical approach, but he argues that these precedents are irreconcilable with the Supreme Court's recent decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). We disagree and hold that our precedents on that subject remain valid.

## I.  Background

Albino-Loe is an alien previously convicted of various crimes in California, including attempted murder and kidnaping. Removal proceedings were initiated against him in September 2010, and he was ordered removed as an aggravated felon. He was physically removed to Mexico on June 6, 2011. One month later, on July 6, 2011, Albino-Loe was arrested in the United States near the Mexican border. He was then charged with being a deported alien found in the United States in violation of 8 U.S.C. § 1326.

At trial, the first government witnesses were the U.S. Border Patrol ("USBP") agent who arrested him and the agent who booked him. They identified him in court, and the

booking agent testified to taking his fingerprints on a card that was then admitted into evidence. They testified regarding Albino-Loe's admissions concerning his alienage and his illegal presence in the United States.

USBP Agent Suzanne Clark was the third government witness. She testified that she was familiar with immigration proceedings and that she was the custodian for the government's permanent immigration record (the "A-File") containing all immigration documents related to Albino-Loe. She testified as to Albino-Loe's unique alien registration number (the "A-Number"). She further testified that she had reviewed his A-File in preparation for testifying.

Based on the photographs contained in the A-File, Agent Clark identified Albino-Loe as the subject of the A-File she reviewed. The defense objected to this in-court identification "as to foundation. Lack of personal knowledge." The objection was overruled and, on cross-examination, it was made clear that Agent Clark had never met nor had any kind of personal contact with Albino-Loe.

Agent Clark further testified about deportation procedures, from the initial Notice to Appear through the process that would be required to apply for permission to reenter after deportation. Through her, the government introduced four documents from Albino-Loe's A-File, including the Notice to Appear and the Warrant of Removal, each authenticated as originals or true and correct copies thereof by a certification from a Department of Homeland Security official who did not testify. The certifications each stated that the records being authenticated "relat[ed] to immigration matters in File No. A#044-127-899, pertaining to Arturo ALBINO-Loe (AKA Arturo Albino)." The defense

objected to introduction of these documents on Confrontation Clause grounds, among others. The documents were admitted into evidence over these objections.

Agent Clark also testified that the only way a deported alien can reapply for permission to reenter the United States is through Form I-212, and that she looked for but found no Form I-212 in Albino-Loe's A-File. She further testified that she looked through the USBP's Computer Linked Automated Information Maintenance System ("CLAIMS") and "did not find any application or anything to do with this individual requesting permission to come back." The defense elicited testimony from Agent Clark that a deported individual could later discover that he was a citizen and come back by simply applying for a passport or following some process other than filing Form I-212.

The final two witnesses were the Immigration and Customs Enforcement agent who physically removed Albino-Loe to Mexico in 2011 and a fingerprint technician. The agent testified about the process of physically removing an alien after an order of removal is entered against him. He also testified that he affixed Albino-Loe's fingerprint to Albino-Loe's Warrant of Removal, admitted into evidence as one of the A-File documents during Agent Clark's testimony. The fingerprint technician testified that he compared Albino-Loe's fingerprints obtained after his arrest to the fingerprints on the Notice to Appear and the Warrant of Removal from the A-File and found a match.

Albino-Loe did not call any witnesses. The jury found him guilty.

In calculating Albino-Loe's advisory range under the Sentencing Guidelines, the district court imposed a 16-level sentencing enhancement for a prior crime of violence under U.S.S.G. § 2L1.2(b)(1)(A) based on his prior California convictions for attempted murder and kidnaping. Including the enhancement, Albino-Loe was sentenced to 78 months' imprisonment.

On appeal, Albino-Loe challenges his conviction and sentence. We have jurisdiction to review Albino-Loe's conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.[1]

## II. Albino-Loe's Conviction

Albino-Loe's most substantial challenge to his conviction is his Confrontation Clause argument against the admissibility of the Notice to Appear. He also raises a Confrontation Clause challenge to the admissibility of the certifications of authenticity for the A-File documents, as well as evidentiary challenges to the admissibility of Agent Clark's in-court identification of Albino-Loe and her testimony regarding Form I-212. We are unpersuaded by any of Albino-Loe's arguments.

We review alleged Confrontation Clause violations de novo. *United States v. Bustamante*, 687 F.3d 1190, 1193 (9th Cir. 2012). We generally review evidentiary rulings for abuse of discretion. *See United States v. Morales*, 720 F.3d 1194,

---

[1] Two motions to supplement the record are also before us. We deny as moot the parties' joint motion to supplement the record. We further deny Albino-Loe's motion to supplement the record with material never presented to the district court. *See* Fed. R. App. P. 10.

1199 (9th Cir. 2013). Even where evidence was improperly admitted, we may nevertheless affirm if the error was harmless. *See id.*

### A.  The Confrontation Clause and Notices to Appear

The main dispute relates to whether the statements concerning Albino-Loe's alienage contained in the Notice to Appear are testimonial under *Crawford v. Washington*, 541 U.S. 36 (2004). The Notice to Appear was the document used by the government to commence the removal proceeding against Albino-Loe in immigration court. It contains allegations by the government that Albino-Loe was an alien, not a citizen of the United States. *Crawford* held that the Confrontation Clause bars admission of testimonial statements unless the declarant is unavailable to testify and the defendant previously had an opportunity to cross-examine the declarant. *Id.* at 68. The person who prepared Albino-Loe's Notice to Appear did not testify at his criminal trial and was not subject to cross-examination.

Although the Supreme Court in *Crawford* did not define what makes a statement testimonial, it noted that a core class of testimonial statements may be defined as "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits . . . or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* at 51 (citation omitted). Since *Crawford*, the Supreme Court has noted that a statement in a public or business record is *not* testimonial where the record was not created "for the purpose of establishing or proving some fact at trial." *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2539–40 (2009). More recently, the Supreme Court has also noted that "[a] document created solely for an 'evidentiary

purpose,' . . . made in aid of a police investigation, ranks as testimonial." *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2717 (2011).

This court has applied the Supreme Court's pronouncements to the particular context of A-File documents. Although we have never addressed statements contained in a Notice to Appear, we have addressed statements in the similar context of a Notice of Intent/Decision to Reinstate Prior Order ("Form I-871"), which also contains statements regarding alienage. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1269 (9th Cir. 2013). Albino-Loe argues that a Notice to Appear is different from Form I-871 in that the former is made in anticipation of litigation while the latter is not, given that a Form I-871 is necessarily generated *after* immigration proceedings. We disagree. As the court reasoned in *Rojas-Pedroza*, the statements regarding alienage contained in Form I-871 are not testimonial because agency regulations require immigration officers to complete such a notice, the statements are "the ordinary contents of" such a notice, and the primary purpose of such a notice is simply "to effect removals, not to prove facts at a criminal trial." *Id.* Applying *Rojas-Pedroza*'s logic, a Notice to Appear is virtually indistinguishable: immigration law requires immigration officers to prepare a Notice to Appear, *see* 8 U.S.C. § 1229(a)(1), the Notice to Appear must include charges against the alien (including of course his alienage), *id.* § 1229(a)(1)(D), and the Notice to Appear only *initiates* removal proceedings. This is so even though both a Notice to Appear and Form I-871 may later be used to prove facts in criminal prosecutions. *See Rojas-Pedroza*, 716 F.3d at 1269. Therefore, we hold that statements made in a Notice to Appear are not testimonial under *Crawford*.

We add that the Supreme Court's pronouncement that a statement is testimonial where it is created for an *evidentiary purpose* further supports our conclusion. *See Bullcoming*, 131 S. Ct. at 2717. A Notice to Appear, like a complaint in a civil case or an indictment in a criminal case, is simply a charging document. The allegations made against the alien in a Notice to Appear are merely that—allegations. They are not meant to be evidence. *Cf.* Ninth Circuit Model Criminal Jury Instruction 1.2 (2014) ("The charge[s] against the defendant [is] [are] contained in the indictment. The indictment simply describes the charge[s] the government brings against the defendant. The indictment is not evidence and does not prove anything."). The mere fact that a Notice to Appear is prepared in anticipation of immigration proceedings is therefore irrelevant.[2]

## B.  Other Challenges to Albino-Loe's Conviction

Albino-Loe argues that admitting the certifications of authenticity violated his Confrontation Clause rights. We have however already held that "a routine certification by the custodian of a domestic public record . . . and a routine attestation to authority and signature . . . are not testimonial in nature." *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005). The certifications at issue here did not accomplish anything other than authenticating the A-File documents to which they were attached. In particular, they did not explicitly state anything about Albino-Loe's alienage. The identification of the attached documents by A-Number and name is a permissible way to identify the documents being authenticated. We therefore reject Albino-Loe's

---

[2] Our holding concerns a Notice to Appear and does not necessarily cover all documents contained in an A-File.

Confrontation Clause challenge to the admissibility of the certifications.

Albino-Loe also argues that Agent Clark's in-court identification of him as the person in the A-File photograph was evidentiary error. An in-court identification is permissible under Federal Rule of Evidence 701(b) only if the "witness has had 'sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'" *United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (quoting *United States v. Henderson*, 241 F.3d 638, 650 (9th Cir. 2001)). Because Agent Clark had very limited familiarity with Albino-Loe, her in-court identification was impermissible. *See United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993). However, given the overwhelming evidence of Albino-Loe's identity, including other in-court identifications and fingerprint evidence, this error was harmless.

Albino-Loe finally argues that Agent Clark's testimony regarding Form I-212 was impermissible expert testimony under Federal Rule of Evidence 702 because it required expertise in immigration law. Albino-Loe did not object to this testimony below and we therefore review only for plain error. *See United States v. Hayat*, 710 F.3d 875, 893 (9th Cir. 2013). Under plain error review, reversal is only warranted where there is "(1) an error; (2) that was plain; and (3) that affected the defendant's substantial rights." *Id.* at 895 (quoting *United States v. Tran*, 568 F.3d 1156, 1163 (9th Cir. 2009)). Here, we need only reach the third prong. Because Agent Clark permissibly testified that she looked in the CLAIMS system and could not find any document evidencing an application for permission to reenter, what she said about Form I-212, although perhaps impermissible expert

testimony, did not affect the outcome of the proceedings. In addition, Albino-Loe's own admissions to his arresting officers regarding his lack of permission to reenter further support this conclusion. In sum, Albino-Loe's substantial rights were not affected by Agent Clark's testimony regarding Form I-212.[3]

## III.   Albino-Loe's Sentence

Albino-Loe argues that, given *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), his prior conviction in California does not categorically qualify as a crime of violence warranting a 16-level sentencing enhancement under section 2L1.2(b)(1)(A)(ii) of the U.S. Sentencing Guidelines. His argument goes as follows. He admits that he was convicted in California of attempted murder and kidnaping. He argues, however, that because California does not provide for the affirmative defense of voluntary abandonment to a charge of attempt that is available in a majority of jurisdictions and under the Model Penal Code, the crime of attempt under California law is categorically overbroad when compared with the generic offense. Although Albino-Loe recognizes that our precedents exclude consideration of affirmative defenses as part of the categorical approach, he argues that these precedents are clearly irreconcilable with *Moncrieffe* and that we may therefore reject our precedents as having been effectively overruled by *Moncrieffe*. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). The government does not dispute that the generic affirmative defense of voluntary abandonment is not available in

---

[3] For the same reasons, Albino-Loe's claim of cumulative prejudicial errors fails. *See United States v. Fernandez*, 388 F.3d 1199, 1256–57 (9th Cir. 2004).

California, but argues that our precedents bar us from considering such an affirmative defense and that those precedents were not affected by *Moncrieffe*.

We review the application of the prior crime of violence enhancement de novo. *See United States v. Gonzalez-Monterroso*, No. 12-10158, 2014 WL 575952, at \*3 (9th Cir. Feb. 14, 2014). We need not engage in a thorough discussion of the categorical approach, because the only question presented by this appeal is a narrow one: whether our precedents excluding consideration of affirmative defenses as part of the categorical approach are clearly irreconcilable with *Moncrieffe*. We conclude that they are not. We are thus bound by our precedents, which require affirming Albino-Loe's sentence.

Our precedents bar consideration of affirmative defenses as part of the categorical approach. *United States v. Velasquez-Bosque*, 601 F.3d 955, 963 (9th Cir. 2010); *United States v. Charles*, 581 F.3d 927, 935 (9th Cir. 2009). The Supreme Court's decision in *Moncrieffe* came later and could supersede our precedents, but that decision said nothing about affirmative defenses. *Moncrieffe* instead concerned a narrow exception to the drug trafficking offenses typically warranting removal under the Immigration and Nationality Act ("INA") as aggravated felonies: the "social sharing of a small amount of marijuana" exception. 133 S. Ct. at 1682. This exception turned what would otherwise be the felony of possession of a controlled substance with intent to distribute into a misdemeanor, which is not an aggravated felony under the INA. *See id.* at 1686–87.

Importantly, in addressing this exception, *Moncrieffe* did not change the core feature of the categorical approach: its

focus on the minimal conduct that would satisfy the *statutory definition* of the offense of conviction. *See Taylor v. United States*, 495 U.S. 575, 600 (1990) (describing the categorical approach as "looking only to the statutory definitions of the prior offenses"). *Moncrieffe* thus turned on the fact that the Controlled Substances Act ("CSA") defined the felony of possession with intent to distribute only by excluding sharing of small amounts of marijuana for no remuneration. *See* 133 S. Ct. at 1686. The crime of possession of marijuana with intent to distribute as defined in Georgia's statutes, however, did not contain such an exception, and conduct punishable under Georgia law thus "did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA." *Id.* at 1687. As defined in that particular federal statutory framework, "[m]arijuana distribution is neither a felony nor a misdemeanor until we know whether the conditions [for the social sharing exception] attach." *Id.* at 1687–88. The Supreme Court thought its conclusion in *Moncrieffe* compelled by *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010): "we made clear in *Carachuri-Rosendo* that . . . a generic federal offense may be *defined* by reference to both '"elements" in the traditional sense' and sentencing factors." *Moncrieffe*, 133 S. Ct. at 1689 (emphasis added) (quoting *Carachuri-Rosendo*, 130 S. Ct. at 2584); *see also id.* at 1687 ("In other words, not only must the state offense of conviction meet the 'elements' of the generic federal offense defined by the INA, but the CSA must punish that offense as a felony."). This was so because the generic offense was defined only by reference to the social sharing exception contained in the CSA.

Although Albino-Loe characterizes the social sharing exception as "an affirmative sentencing defense," the exception was not an affirmative defense, but only a

sentencing factor that was part of the definition of the offense of conviction. Indeed, the factor defined whether the offense was a misdemeanor or a felony. Which party bore the burden of proving the presence or absence of the sentencing factor in the prior criminal prosecution was irrelevant to the Supreme Court's analysis. *See id.* at 1688–89.

The generic offense at issue here, attempt, is not defined with reference to sentencing factors or affirmative defenses. *See Gonzalez-Monterroso*, 2014 WL 575952, at *4 ("We have defined 'attempt' as requiring '[1] an intent to commit' the underlying offense, along with '[2] an overt act constituting a substantial step towards the commission of the offense.'" (quoting *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1100 (9th Cir. 2011)) (alterations in original)); *see also, e.g.*, Model Penal Code § 5.01(1). *Moncrieffe* therefore does not speak to the situation presented here. While *Moncrieffe* tells us that sentencing factors must be considered as part of the categorical approach in at least some circumstances, *Moncrieffe* did not disturb the categorical approach's focus on the comparison between the definition of the offense of conviction and the definition of the generic offense. Under binding Ninth Circuit precedent, any extraneous affirmative defenses are therefore irrelevant to the categorical approach.

The Supreme Court's brief reference to the firearms offenses and the antique firearms exception does not change our conclusion. *See Moncrieffe*, 133 S. Ct. at 1693. Besides being only dictum, this reference merely reinforces what *Moncrieffe* discussed at length in the drug trafficking context and remains consistent with the categorical approach's focus on *definitions* of criminal offenses. Indeed, the antique firearms exception appears in 18 U.S.C. § 921, a section titled "Definitions." *See* 18 U.S.C. § 921(a)(3) ("The term 'firearm'

means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. *Such term does not include an antique firearm.*" (emphasis added)). One cannot know what conduct constitutes a firearms offense without knowing the definition of "firearm," which excludes antique firearms. Here, a generic attempt is defined as an intent to commit an underlying crime and an overt act constituting a substantial step. *See Gonzalez-Monterroso*, 2014 WL 575952, at \*4. We need not know whether the voluntary abandonment defense is available to know what conduct is sufficient to satisfy the generic definition of attempt. California defines attempt to be the same as the generic offense. *See United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1107–10 (9th Cir. 2009). There is thus a categorical match, and the district court did not err in imposing an enhancement for a prior crime of violence.

## IV.    Conclusion

We reject Albino-Loe's challenges to his conviction and sentence. In so doing, we hold that statements made in a Notice to Appear are not testimonial and we reaffirm the continuing vitality of our precedents barring consideration of affirmative defenses as part of the categorical approach.

**AFFIRMED.**