[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

Nos. 15-12344 & 15-14352

————————————————

Agency No. A096-761-835

NATALIA LORENA CINTRON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petitions for Review of Decisions of the
Board of Immigration Appeals

————————————————

(February 20, 2018)

Before MARCUS, JILL PRYOR and SILER,[*] Circuit Judges.

JILL PRYOR, Circuit Judge:

————————————————

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Natalia Cintron petitions for review of a Board of Immigration Appeals ("BIA") decision denying her application for cancellation of removal from the United States and ordering that removal. The BIA concluded that Cintron failed to prove that she had not been convicted of an aggravated felony, which rendered her ineligible for cancellation of removal. In short, the BIA determined that the Florida narcotics statute under which Cintron had been convicted was divisible into separate offenses and, because the record of her conviction was inconclusive regarding which offense she had committed, she could not demonstrate her eligibility for cancellation of removal.

We disagree with the BIA's conclusion. Because the Florida statute under which Cintron was convicted was indivisible and categorically overbroad, a conviction under that statute cannot qualify as an aggravated felony. Cintron's narcotics conviction therefore does not disqualify her from cancellation of removal. We grant her petition and remand to the BIA to reconsider her application.[1]

## I.    BACKGROUND

Cintron is a native and citizen of Argentina and a lawful permanent resident of the United States. In 2009, she pled guilty to violating Florida Statutes

---

[1] Cintron filed a motion for reconsideration with the BIA, which it denied also. She petitions this Court to review that denial; however, in light of our decision to grant her initial petition, we dismiss Cintron's second petition as moot.

§ 893.135(1)(c)1. (2007), which criminalized various narcotics offenses.  The Department of Homeland Security initiated removal proceedings against Cintron, and an immigration judge ordered her removal to Argentina.  She appealed this decision to the BIA, which overturned it because the record of her narcotics conviction was inconclusive as to the elements of her crime of conviction.  The BIA remanded the case to the immigration judge, and Cintron applied for cancellation of removal.  The immigration judge determined that because the record of her conviction remained inconclusive, she failed to prove her crime of conviction was not an "aggravated felony" that would render her ineligible for cancellation of removal under the Immigration and Nationality Act ("INA") § 240A(a)(3).  The immigration judge once again ordered her removal.  Cintron appealed to BIA, which agreed with the immigration judge that she was ineligible for cancellation of removal because of the Florida conviction.

The BIA reached two conclusions about Cintron's Florida conviction.  First, it determined that although a § 893.135(1)(c)1. offense was not categorically an aggravated felony, the Florida statute was divisible.  That is, the statute listed multiple elements in the alternative, effectively creating several different crimes.  Second, the BIA concluded that because Cintron was unable to produce any documentation identifying which of those crimes she committed, she failed to carry her burden of proving that she had never been convicted of an aggravated

3

felony.  The BIA dismissed her appeal, and Cintron then filed this petition for review of the BIA's decision.

## II.    DISCUSSION

Whether Cintron's crime of conviction was an aggravated felony is a question of law that we review *de novo*.  *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1279 (11th Cir. 2013).[2]  In answering this question, we first discuss the meaning of "aggravated felony" in the INA and the so-called "categorical approach" we must use to determine whether an offense qualifies as an aggravated felony.  Second, applying the Supreme Court's instructions and relevant Florida law, we conclude that the narcotics statute under which Cintron was convicted was indivisible and categorically overbroad and, therefore, not an aggravated felony under the INA.  Third, we explain why the government's arguments to the contrary are unavailing.

## A.    We Use a "Categorical Approach" to Determine Whether an Offense Qualifies as an Aggravated Felony Under the INA.

The INA provides that "[t]he Attorney General may cancel removal in the case of an alien who is . . . deportable from the United States if the alien . . . has not been convicted of any aggravated felony."  INA § 240A(a)(3).  The INA defines "aggravated felony" to include "illicit trafficking in a controlled substance

---

[2] "Our review is limited to the BIA's decision because it did not expressly adopt the [immigration judge's] decision."  *Donawa*, 735 F.3d at 1283 n.5 (internal quotation marks and alteration omitted).

. . . including a drug trafficking crime" as defined in 18 U.S.C. § 924(c).  INA § 101(a)(43)(B).  A "drug trafficking crime" is "any felony punishable under the Controlled Substances Act" ("CSA"), 18 U.S.C. § 924(c)(2), which, as relevant here, includes manufacturing, distributing, or dispensing a controlled substance or possessing a controlled substance with the intent to manufacture, distribute, or dispense it.  21 U.S.C. § 841(a)(1).  Absent circumstances not present here, simple possession is not punishable as a felony under the CSA, so it is not a drug trafficking crime and thus not an aggravated felony under the INA.  *See* 21 U.S.C. § 844.

"When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA."  *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).  "Under this approach we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony."  *Id.* (internal quotation marks omitted).  "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense."  *Id.* (internal quotation marks and alterations omitted).  "Because we examine what the state conviction necessarily involved, not the facts

5

underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Id.* at 190-91 (internal quotation marks and alterations omitted).

If the state statute "lists multiple, alternative elements, and so effectively creates several different crimes," then the statute is "divisible," and we employ the "modified categorical approach . . . to determine which alternative formed the basis of the [noncitizen]'s prior conviction." *Descamps v. United States*, 133 S. Ct. 2276, 2281, 2285 (2013) (internal quotation marks omitted).[3] Under the modified categorical approach, we look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a [noncitizen] was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). These documents are known as *Shepard*[4] documents.

Sometimes, though, what appear in a statute to be alternative elements— "'constituent parts' of a crime's legal definition" that either must be admitted to by a defendant or found by a fact-finder to sustain a conviction—are instead

---

[3] "*Descamps* addressed the modified categorical approach in the context of punishment under the Armed Career Criminal Act rather than . . . the immigration context. The general analytical framework and principles, however, are analogous, and so this Court has routinely imported holdings from one context to the other." *Donawa*, 735 F.3d at 1280 n.3.

[4] *Shepard v. United States*, 544 U.S. 13, 16 (2005).

6

alternative "means" of committing a single offense. *Mathis*, 136 S. Ct. at 2248.

Unlike elements, "means" are circumstances that have no particular legal

significance and "need neither be found by a jury nor admitted by a defendant."

*Id.* If instead of listing alternative elements a statute lists alternative means, any

one of which would not constitute an aggravated felony, then the statute is

indivisible and categorically cannot constitute a generic offense. *See id.* at 2256-

57.

**B.      Florida Statutes § 893.135(1)(c)1. Is Categorically Overbroad and Indivisible; Thus, Cintron's Conviction Does Not Qualify as an Aggravated Felony Under the INA.**

At the time of Cintron's conviction, Florida Statutes § 893.135(1)(c)1.

provided:

> Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 4 grams or more of any morphine, opium, oxycodone, hydrocodone, hydromorphone, or any salt, derivative, isomer, or salt of an isomer thereof, including heroin, as described in s. 893.03(1)(b), (2)(a), (3)(c)3., or (3)(c)4., or 4 grams or more of any mixture containing any such substance, but less than 30 kilograms of such substance or mixture, commits a felony of the first degree, which felony shall be known as "trafficking in illegal drugs," punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 893.135(1)(c)1.[5]

---

[5] We here discuss the 2007 version of Florida Statutes § 893.135, which was in effect on the date Cintron's offense was committed. *See* Fla. Stat. § 893.135 (2007).

7

Both parties agree that a violation of Florida Statutes § 893.135(1)(c)1. was not categorically an aggravated felony because the least of the acts it criminalized—mere possession of a listed narcotic—is not a felony under the CSA. *See id*.; *see also* 21 U.S.C. §§ 841(a)(1), 844. Where the parties disagree is whether the Florida statute was divisible, such that the modified categorical approach applies, or indivisible, meaning the statute is categorically overbroad. The specific question we must answer here is whether the statutory language, "sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of," listed alternative elements creating six distinct narcotics crimes or alternative means of committing a single crime. For the reasons that follow, we hold that these six alternative methods of commission were means, not elements, so that § 893.135(1)(c)1. was indivisible. Thus, a conviction under the statute categorically does not qualify as an aggravated felony under the INA.[6]

To determine whether statutory alternatives are elements or means, we look to authoritative sources of state law. *Mathis*, 136 S. Ct. at 2256. "[T]he statute on its face may resolve the issue." *Id.* If, for example, the statute provides for tiered

---

[6] Because we hold that the statute under which Cintron was convicted was indivisible, we need not decide the effect of inconclusive *Shepard* documents on a noncitizen's application for cancellation of removal, an issue that our Court has previously acknowledged but not yet decided. *See Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1242 (11th Cir. 2016) (leaving undecided "who has the burden of proof to establish eligibility for relief from removal" if the *Shepard* "documents are inconclusive").

8

punishments depending on particular statutory alternatives, the alternatives are elements. *Id.* Conversely, if the statute is "drafted to offer 'illustrative examples,'" those examples are means of committing the offense, not elements. *Id.* If the text of the statute itself does not resolve our inquiry, a state court decision may. *Id.* For instance, in *Mathis* the Supreme Court looked to a decision of the Iowa Supreme Court, which held that a state burglary statute's "listed premises . . . are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). The Supreme Court therefore determined that Iowa's burglary statute was indivisible. *Id.* In all instances, "[i]f a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." *Schad v. Arizona*, 501 U.S. 624, 636 (1991).

If neither the text of the statute nor state decisional law resolves the means-or-elements question, then courts may look to other evidence of state law, including indictments or jury instructions. *Mathis*, 136 S. Ct. at 2256-57. If these sources do not "speak plainly," courts must resolve the inquiry in favor of

9

indivisibility. *Id.* at 2257. "But between those documents and state law, that kind of indeterminacy should prove more the exception than the rule." *Id.*

Here, "the statute on its face" strongly suggested indivisibility. *Id.* at 2256. Section 893.135(1)(c)1. specified that an individual who "knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of" a listed narcotic committed "a felony of the first degree, which felony shall be known as 'trafficking in illegal drugs.'" The alternative methods were denominated as a single offense—"trafficking in illegal drugs"—suggesting that the six listed alternatives were all means of accomplishing "trafficking," rather than separate elements creating distinct offenses.

Florida caselaw confirms what the statutory language suggested. The Fifth District Court of Appeal considered whether conspiracy to traffic cocaine required the State to prove that the conspirators (a buyer and a seller) both agreed to commit the same trafficking act—that is, "selling, purchasing, delivering, or possessing." *Hampton v. State*, 135 So. 3d 440, 441 (Fla. Dist. Ct. App. 2014) (internal quotation marks omitted).[7] The court explained that the State was not required to make this showing, reasoning that "[t]rafficking in cocaine is *an offense* that can be committed *in a variety of ways*. Thus, the buyer and seller . . . were, in fact, agreeing to commit the *same crime* (trafficking), albeit in *different ways* (one by

---

[7] The cocaine trafficking statute is structured identically to the statute at issue in this case. *Compare* Fla. Stat. § 893.135(1)(b)1., *with* Fla. Stat. § 893.135(1)(c)1.

purchasing, the other by selling)." *Id.* at 443 (emphases added). The Third District Court of Appeal rejected a similar challenge advanced against a conviction for conspiracy to traffic in oxycodone. *See State v. Roth*, 165 So. 3d 66, 67 (Fla. Dist. Ct. App. 2015) ("The offense of trafficking can be committed by one or more of the several acts delineated in the statute, including sale or delivery. A conspiracy to commit trafficking only requires that the co-conspirators agree to commit the same specified offense, not the same act.").

Numerous other Florida state court decisions have described § 893.135 in ways that suggest it set forth a single "trafficking" crime that could be committed in a variety of ways. *See, e.g.*, *Palmer v. State*, 180 So. 3d 1096, 1097 (Fla. Dist. Ct. App. 2015) ("[O]ne may commit the crime of trafficking in methamphetamine, *inter alia*, by manufacturing the drug in specified quantities."); *Cogbill v. State*, 940 So. 2d 537, 539 (Fla. Dist. Ct. App. 2006) ("[Section 893.135(f)] sets forth a number of alternate forms of conduct, any of which constitute the proscribed offense."); *McCluster v. State*, 681 So. 2d 716, 717 (Fla. Dist. Ct. App. 1996) ("Trafficking in illegal drugs can be proven in a variety of ways:  sale, possession, manufacture, delivery and bringing into this state."); *Ramos v. State*, 529 So. 2d 807, 808 (Fla. Dist. Ct. App. 1988) ("[T]rafficking includes the acts of possession and delivery[.]").

11

Only one case the government cites, *Burson v. State*, 102 So. 3d 714 (Fla. Dist. Ct. App. 2012), concerns the statute under which Cintron was convicted. Contrary to the government's argument, though, *Burson* does not support its position; indeed, *Burson* is fully consistent with our conclusion that Florida Statutes § 893.135(1)(c)1. was indivisible.  In *Burson*, the indictment charged the defendant solely with the sale of oxycodone, but the jury instructions allowed a conviction based on proof that the defendant "'knowingly possessed, purchased, sold, or delivered' oxycodone."  *Id.* at 715 (emphasis omitted).  Despite noting that the verdict form, in keeping with the jury instructions, did not require the jury to agree on a particular mode of commission, the *Burson* court gave no indication that the use of this general verdict form was error.  *Id.* at 717.  Instead, the court held that the instructions created error *in Burson's case* because they defined trafficking to include possession, an offense for which Burson was not charged and which could not legally have supported a trafficking conviction given that Burson had a valid prescription for oxycodone.  *Id.*  There was no suggestion that, had the verdict form excluded possession but included the remaining alternatives, any error would have been committed.

The government quotes portions of *Burson* that discussed "elements," but these are all found in a single block quotation from *Wright v. State*, 975 So. 2d 498, 499 (Fla. Dist. Ct. App. 2007).  *See Burson*, 102 So. 3d at 716.  Outside of

12

that quote, *Burson* never used the word "element." And, in any event, *Wright* also is consistent with our conclusion here. In *Wright*, the Second District Court of Appeal explained that the state cocaine trafficking statute—which, as we have mentioned, is structured identically to the statute under which Cintron was convicted—has "three elements" which are "met when an individual (1) knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, (2) cocaine or any mixture containing cocaine, (3) in the amount of 28 grams or more, but less than 150 kilograms." 975 So. 2d at 499 (citing Fla. Stat. § 893.135(1)(b)1.). Nothing in *Wright* suggested that the alternative methods of commission were, themselves, separate elements. Rather, the court's explanation indicated that the alternative methods of commission were means of committing "[t]he offense of trafficking in cocaine." *Id.*

Here, Florida "courts have determined that [the] statutory alternatives [were] mere means of committing a single offense, rather than independent elements of the crime." *Schad*, 501 U.S. at 636. We are bound by their decision. *Id.*; *see Mathis*, 136 S. Ct. at 2256.

## C.    The Government's Arguments To the Contrary Are Unavailing.

The government argues that Florida decisional law, rather than demonstrating indivisibility, shows that the statute under which Cintron was

13

convicted was divisible.  But the government's cited authority largely concerns a different Florida controlled substance statute with a different structure, Florida Statutes § 893.13(1)(a).  That statute provides that "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance."  This Court recently held that Florida Statutes § 893.13(1)(a) is divisible, *see Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1177 (11th Cir. 2016), and the government argues that, because the statutes are similar, we are compelled to reach the same divisibility conclusion with respect to § 893.135(1)(c)1.  Not so.

Importantly, unlike § 893.135(1)(c)1., § 893.13(1)(a) lacks any language indicating that the six methods of commission are to be treated as a single offense.  The impact of this textual distinction—which renders § 893.135(1)(c)1. indivisible and § 893.13(1)(a) divisible—is played out in Florida caselaw.  For example, in *Tyler v. State*, 107 So. 3d 547, 549 (Fla. Dist. Ct. App. 2013), the First District Court of Appeal held that under § 893.13(1)(a) the State could charge a defendant both with possession with intent to sell a controlled substance and sale of that same controlled substance without running afoul of the Double Jeopardy Clause.  The court explained, "possession with intent to sell, on the one hand, and the actual sale, on the other, of the same illicit substance should be viewed, not as alternative

14

ways in which section 893.13(1)(a) could be violated, but as two separate crimes, albeit proscribed by the same, undivided subsection of the same statute." *Id.*

The *Tyler* court also recognized that "[i]n other contexts, the courts have distinguished between different crimes, proscribed by different statutory provisions, and different methods of committing a 'single statutory offense.'" *Id.* at 549 n.3. In those contexts, "[w]hen a single statutory offense describes multiple alternative acts, each of which is prohibited, each separate prohibited act does not constitute a separate offense for double jeopardy purposes since there is but one statutory offense." *Id.* (internal quotation marks omitted). Section 893.135(1)(c)1. was just this type of single statutory offense. It provided that the alternative methods of commission constitute "*a felony* . . . known as 'trafficking in illegal drugs.'" Fla. Stat. § 893.135(1)(c)1. (emphasis added).

The government also contends that Florida's model jury instructions for § 893.135 indicated divisibility, but we think the instructions only echo this distinction we have identified between that statute and § 893.13(1)(a). For § 893.135, the instructions provided: "To prove the crime of Trafficking in Illegal Drugs, the State must prove the following four elements beyond a reasonable doubt." *In re Std. Jury Instr. in Crim. Cases (No. 2005-3)*, 969 So. 2d 246, 265 (Fla. 2007). These instructions described one crime: "Trafficking in Illegal

15

Drugs."[8]  By contrast, the instructions for § 893.13 provide, "[t]o prove the crime

of (crime charged), the State must prove the following (applicable number)

elements beyond a reasonable doubt."  *In re Std. Jury Instr. in Crim. Cases (No.*

*2013-05)*, 153 So. 3d 192, 196 (Fla. 2014).  These instructions provide trial courts

a blueprint for describing multiple crimes, all chargeable under the same statute.

For these reasons, we are unmoved by the government's plea that we

construe § 893.135(1)(c)1. as divisible.

## III.   CONCLUSION

A plain reading of the statute, aided by the weight of Florida authority,

indicates that Florida Statutes § 893.135(1)(c)1. created a single drug trafficking

---

[8] The model jury instructions further define the first of these "four elements" of "the crime of Trafficking in Illegal Drugs" as:

**1.**  (Defendant) **knowingly**

**[sold]**

**[purchased]**

**[manufactured]**

**[delivered]**

**[brought into Florida]**

**[possessed]**

**a certain substance.**

*In re Std. Jury Instr. in Crim. Cases (No. 2005-3)*, 969 So. 2d at 265.  Bracketed alternatives may suggest divisibility, as the government argues.  Here, though, because the bracketed information appeared as alternatives to prove a single crime, we do not read the instruction that way.  But even if we assume that this portion of the jury instructions suggested alternative elements rather than means, we must look first to the statutory text and state decisional law, *see Mathis*, 136 S. Ct. at 2256, which we find conclusive on the issue.  *See supra* Part II.B.

16

offense that could be committed by alternative means.  Because the jury did not need to agree on the particular method of commission to convict, the statute was indivisible.  An indivisible and overbroad statute is categorically not an aggravated felony; thus, Cintron's conviction under the statute does not disqualify her from cancellation of removal.  *See Donawa*, 735 F.3d at 1281-82.  We therefore **GRANT**[9] Cintron's petition and **REMAND** this case to the BIA for further proceedings consistent with this opinion.

---

[9] **PETITION 15-12344 GRANTED.  PETITION 15-14352 DISMISSED AS MOOT.**