[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11156

_____

Agency No. A091-443-372

CHARLES KEVIN SIMPSON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 4, 2021)

Before JORDAN, MARCUS, and GINSBURG,[*] Circuit Judges.

JORDAN, Circuit Judge:

---

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

Charles Simpson petitions for review of a final order of removal issued by the Board of Immigration Appeals. The main question presented is whether a conviction under Fla. Stat. § 790.23(1)(a)—which makes it unlawful for a convicted felon to "own or to have in his or her care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device"—constitutes a "firearm offense" within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(C), and its cross-reference to 18 U.S.C. § 921(a)(3). We hold that it does not.

**I**

Mr. Simpson, a native and citizen of the Bahamas, entered the United States in 1978 as a B-2 tourist visitor. In 1990, he adjusted his status to lawful permanent resident.

In 2018, Mr. Simpson pled guilty in a Florida court to being a felon in possession of a firearm, in violation of Fla. Stat. §§ 790.23(1) & 775.087(2)(a)(1), and to the improper exhibition of a weapon, in violation of Fla. Stat. § 790.10. Based on those convictions, the Department of Homeland Security issued Mr. Simpson a notice to appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(C) because he was an alien convicted of a firearm offense (as defined in 18 U.S.C. § 921(a)(3))

2

under the INA. The notice ordered Mr. Simpson to appear on a "[t]ime and date to be set." Mr. Simpson was subsequently served with a notice of hearing advising him that the removal proceeding would take place at 8:00 a.m. on June 28, 2018, at the Krome Immigration Court in Miami, Florida.

Mr. Simpson appeared with counsel at the removal proceeding. Following that proceeding, an immigration judge found Mr. Simpson removable as charged. The immigration judge denied Mr. Simpson's request for a continuance pending an application for a U-visa, and ordered him removed to the Bahamas.

On appeal to the BIA, Mr. Simpson argued that the immigration judge lacked jurisdiction because the notice to appear failed to contain the required time and place information for the removal proceeding. *See generally Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018) (holding that a notice to appear that does not specify the time and place of the removal hearing does not comport with 8 U.S.C. § 1229(a)(1), and consequently is not a notice to appear at all). He also asserted that his 2018 conviction for violating Fla. Stat. § 790.23(1)(a) did not constitute a firearm offense under 8 U.S.C. § 1227(a)(2)(C).

The BIA, in a one-member order, dismissed Mr. Simpson's appeal. *See In re Simpson*, 2019 WL 2464457 (BIA 2019). First, the BIA rejected Mr. Simpson's argument based on the notice to appear. Applying its precedential decision in *Matter*

3

*of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018), the BIA ruled that a notice to appear lacking the requisite time and place information nonetheless properly vests an immigration judge with jurisdiction when it is followed by a notice of hearing providing that information. *See Simpson*, 2019 WL 2464457, at *2. Second, the BIA concluded that Mr. Simpson's conviction under Fla. Stat. § 790.23(1)(a) constituted a firearm offense under 8 U.S.C. § 1227(a)(2)(C) and its cross-reference to 18 U.S.C. § 921(a)(3). Although the Florida statute was categorically overbroad, it was divisible "with respect to the types of objects it covers." *Id.* at *4. The elements of Mr. Simpson's firearm offense, moreover, corresponded with those in § 921(a), and the charging document made clear that Mr. Simpson was convicted of possessing a firearm, i.e., a shotgun. Mr. Simpson was therefore removable. *See id.* at *2-*4.[1]

Mr. Simpson timely filed this petition for review. He presents the same two arguments that he raised before the BIA.

## II

Our review of the BIA's legal conclusions is *de novo*. *See George v. U.S. Att'y Gen.*, 953 F.3d 1300, 1303 (11th Cir. 2020). This plenary review applies to both of Mr. Simpson's arguments, but we need only discuss whether a conviction for a

---

[1] In reaching its decision, the BIA said that it found no Florida cases answering whether the prohibited items in § 790.23(1)(a) are elements or means. *See Simpson*, 2019 WL 2464457, at *3. That observation, as we detail later, was incorrect.

4

violation of Fla. Stat. § 790.23(1)(a) constitutes a firearm offense under 8 U.S.C. § 1227(a)(2)(C) and 18 U.S.C. § 921(a)(3) (the statute that § 1227(a)(2)(C) looks to for the definition of "firearm"). That is because Mr. Simpson's other contention—that the failure to set out the time and place of the removal proceeding in the notice to appear deprived the immigration judge of jurisdiction—is foreclosed by our decision in *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1154 (11th Cir. 2019) (holding that the time-and-place requirement for a notice to appear under 8 U.S.C. § 1229(a)(1) is not jurisdictional).[2]

## III

As pertinent here, the INA makes an alien removable if "at any time after admission [he] is convicted under any law of … possessing … any weapon, part, or accessory which is a firearm," as defined by 18 U.S.C. § 921(a). *See* 8 U.S.C. § 1227(a)(2)(C). A firearm, as defined by § 921(a)(3), is "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

---

[2] We have no occasion in this case to address what effect, if any, the Supreme Court's recent decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480-81 (2021) (holding that, for purposes of the "stop-time" rule of the INA, a notice to appear must contain the time and place of the alien's removal hearing), might have on *Perez-Sanchez*.

Mr. Simpson was convicted under Fla. Stat. § 790.23(1)(a). That statute makes it unlawful for a convicted felon "to own or to have in his or her care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon including a tear gas gun or chemical weapon or device." Under Florida law, "ammunition" is an object that consists of "all of the following:" (a) "[a] fixed metallic or nonmetallic hull or casing containing a primer;" (b) "[o]ne or more projectiles, one or more bullets, or shot;" and (c) "[g]unpowder." Fla. Stat. § 790.001(19). A "concealed weapon" is "any dirk, metallic knuckles, billie, tear gas gun, chemical weapon or device, or other deadly weapon carried on or about such a person in such a manner as to conceal the weapon from the ordinary sight of another person." Fla. Stat. § 790.001(3)(a). The terms "dirk" and "billie" are not statutorily defined, but in common parlance a "dirk" is a "long, straight dagger" and a "billie" (sometimes spelled "billy") is a "club, heavy stick, [or] truncheon." *See* Webster's New World College Dictionary 144, 408 (4th ed. 2000). A "tear gas gun" or "chemical weapon or device" means "any weapon of such nature, except a device known as a 'self-defense chemical spray.'" Fla. Stat. § 790.001(3)(b).

## IV

Determining whether a conviction falls within the scope of a listed offense under the INA has proven to be a complicated task. The Supreme Court has

developed a hierarchy of approaches, and we summarize them before getting to the

merits.[3]

**A**

The simplest (we say this guardedly) is the "categorical" approach, which asks

whether a conviction under the relevant state or federal statute would categorically

fit within the ambit of the offense listed in the INA:

> Because Congress predicated deportation 'on convictions, not
> conduct,' th[is] approach looks to the statutory definition of the offense
> of conviction, not to the particulars of an alien's behavior. The state
> conviction triggers removal only if, by definition, the underlying crime
> falls within a category of removable offenses defined by federal law.
> An alien's actual conduct is irrelevant to the inquiry, as the adjudicator
> must 'presume that the conviction rested upon nothing more than the
> least of the acts criminalized' under the state statute.

*Mellouli v. Lynch*, 575 U.S. 798, 805 (2015) (citations omitted). *See also Descamps*

*v. United States*, 570 U.S. 254, 257 (2013) (explaining that under the categorical

approach a court compares "the elements of the statute forming the basis of the

[person's] conviction with the elements of the 'generic' crime," and a conviction

under the statute will constitute a conviction for the generic offense only "if the

statute's elements are the same as, or narrower than, those of the generic offense");

*Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1281-83 (11th Cir. 2013) (applying the

---

[3] These approaches were initially used to address the application of federal criminal statutes like the Armed Career Criminal Act, 18 U.S.C. § 924(e), but have since "migrated" to the immigration context. *See Pereida v. Wilkinson*, 141 S. Ct. 754, 762 (2021).

categorical approach, in an immigration case, with respect to a Florida narcotics statute).

If, however, the statute of conviction is broader than the federal generic definition and "punishes some conduct that would satisfy the elements of a federal felony and some conduct that would not," a court can employ the "modified categorical" approach to determine whether the underlying statute is "divisible." *See Donawa*, 735 F.3d at 1280. *See also Pereida*, 141 U.S. at 762-63. Whether a statute is divisible depends on whether alternatively listed items in the statute are "elements" or "means." *See Descamps*, 570 U.S. at 260-61. The Supreme Court has distinguished the two terms by defining "elements" as "the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction'"—and "means" as the "various factual ways of committing some component [or element] of the offense" that need not be proved to the jury or admitted by the defendant. *See Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016). If the items are means, rather than elements, the modified categorical approach cannot be used, and a court must apply the categorical approach. *See id.* at 2253-54.

Courts applying the modified categorical approach first look to the plain language of the statute itself and any decisional law of the governing jurisdiction. *See Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1385 (11th Cir. 2018). If those sources

8

of state law do not clearly resolve the issue, courts can consider things like the indictment and jury instructions to determine whether a statute contains elements or means. *See id.* "If these sources do not 'speak plainly,' [a] court[ ] must resolve the inquiry in favor of indivisibility." *Id.* Where the statute is found to be divisible, a court does "what the categorical approach demands" and determines whether "the elements of the crime of conviction (including the alternative element used in the [alien's] case)" categorically fit within the federal definition of that crime. *See George*, 953 F.3d at 1304.

In *Aspilaire v. U.S. Att'y Gen.*, 992 F.3d 1248, 1254 (11th Cir. 2021), we recently addressed whether § 790.23(1)(a) is categorically overbroad because its antique firearm exception—as set out in §§ 790.001(1) and 790.001(6))—fails to "include a separate black-powder muzzleloader category" in the way that §§ 921(a)(3) and 921(a)(16) do. The answer to that question, we held, is no for several reasons. First, the Supreme Court has suggested in dicta that "petitioners making antique-firearms arguments may not rely on statutory language alone," and there were no exemplar prosecutions suggesting that Florida actually applied the antique firearm exception in the way argued by the petitioner. *See id.* at 1255-57. Second, even looking only at the "used in the commission of a crime" language in § 790.001(6), that language was not categorically overbroad because the term "use" connotes activity beyond simple possession. *See id.* at 1257. Third, even though

9

Florida "does not classify muzzleloaders as antique firearms on the same basis as the federal government," both statutory approaches "lead to the same result[ ]" because "[g]unsmiths cannot freely combine different propellants and ignition systems[.]" *Id.* at 1258.

One of the arguments made by Mr. Simpson here is that the different treatment of antique firearms in § 790.001(1) renders § 790.23(1)(a) categorically overbroad when compared to §§ 921(a)(3) and 921(a)(16). *See* Br. for Appellant at 12-13. That argument is now foreclosed by *Aspilaire.*

*Aspilaire*, however, does not completely control this appeal. Mr. Simpson also argues that § 790.23(1)(a) is overbroad because, unlike § 921(a)(3), it includes ammunition as a prohibited item. *See* Br. for Appellant at 11-12. *Aspilaire* did not address or resolve that contention, so we need to tackle it here. Moreover, *Aspilaire* expressly stated that it was not deciding whether § 790.23(1)(a) is divisible with respect to the items that a felon may not possess or carry in a concealed manner. *See Aspilaire*, 992 F.3d at 1253 ("We express no opinion on the divisibility of the Florida statute."). As noted, the BIA found that Mr. Simpson had committed a removable firearms offense under § 1227(a)(2)(C) of the INA because § 790.23(1)(a) is divisible with respect to its list of prohibited items, and the government defends the BIA's decision on this ground. Divisibility is thus squarely presented, as the

10

government has the burden of establishing by clear and convincing evidence that an alien is eligible for removal. *See Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1179 (11th Cir. 2018) (citing 8 U.S.C. § 1229a(c)(3)(A)).

**B**

We start with the text of § 790.23(1)(a). To recap, the statute makes it unlawful for a convicted felon "to own or to have in his or her care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon including a tear gas gun or chemical weapon or device."

The statutory language and structure make it pretty clear, we think, that § 790.23(1)(a) creates two separate crimes—a felon's possession of a prohibited item and a felon's concealed carrying of a prohibited item. First, the words possession and carry mean different things and refer to different physical acts. *See Rodriguez v. State*, 174 So.3d 457, 459 (Fla. 4th DCA 2015) ("The term 'carrying' is narrower than the term 'possessing.'"). Possession is the "[a]ctual holding or occupancy with or without rightful ownership," while carry means "[t]o hold or support while moving" or "[t]o take from one place to another." The American Heritage Dictionary of English Language 285, 1370 (4th ed. 2009). *See also* Black's Law Dictionary 257, 1351 (10th ed. 2014) (defining possession as "[t]he fact of having or holding property in one's power" and carry as "[t]o convey or transport").

11

Second, possession can be open and obvious. The carrying proscribed by § 790.23(1)(a), however, must be concealed. *See* § 790.001(3)(a) ("'Concealed weapon' means any dirk, metallic knuckles, billie, [etc.] carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person."). Possessing a prohibited item is therefore different than the concealed carrying of a prohibited item.

Florida precedent confirms our understanding of § 790.23(1)(a). The Florida courts to have addressed the issue have all held that § 790.23(1)(a) creates "two separate crimes. The first is possession [or control] of a firearm, ammunition, or electric weapon or device by a convicted felon. The second is carrying a concealed weapon, including a tear gas gun or chemical weapon [or device], by a convicted felon." *James v. State*, 16 So.3d 322, 326 (Fla. 4th DCA 2009) (citations omitted). *Accord Williams v. State*, 48 So.3d 192, 193-94 (Fla. 2d DCA 2010); *Wiggins v. State*, 253 So.3d 1196, 1199 (Fla. 1st DCA 2018). *Cf. Clarke v. United States*, 184 So.3d 1107, 1108 & n.1 (Fla. 2016) (explaining, in response to a certified question, that § 790.23(1)(a) prohibits both the possession of, and the concealed carrying of, a specified prohibited item).

Although § 790.23(1)(a) is generally divisible because it delineates two different crimes, that is only the beginning of the analysis. "General divisibility …

12

is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, *by its elements*, [the crime defined by federal law]." *United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013).

## C

The BIA has recognized that § 790.23(1)(a) is categorically overbroad. *See In re Francis*, 2019 WL 3857803, at *2 (BIA 2019) ("Because of its greater breadth, … § 790.23(1)(a) … is categorically overbroad vis-à-vis [§ 1227(c)(2)(C)] of the [INA] and 18 U.S.C. § 921(a)."). We agree. With respect to the possession offense, the statute prohibits a felon's possession of ammunition, and ammunition does not constitute a firearm under § 921(a)(3) because ammunition is not a weapon which can expel a projectile. Nor does ammunition fit within the other definitions of a firearm in § 921(a)(3). With respect to the concealed carrying offense, § 790.23(1) prohibits a felon's concealed carrying of items like dirks (i.e., daggers), metallic knuckles, and billies (i.e., clubs or truncheons) that likewise are not covered by the definition of a firearm in § 921(a)(3). Stated differently, the least culpable conduct for the possession offense is the possession by a felon of ammunition, and the least culpable conduct for the concealed carrying offense is the concealed carrying of a dirk or billie, and both of these scenarios are broader than the firearm offense

described by § 1227(a)(2)(C) of the INA through its cross-reference to the definition of a firearm in § 921(a)(3).

So both of the Florida offenses in § 790.23(1)(a) are broader than what the applicable federal law provides. And that, for purposes of the categorical approach, is the end of the matter. *See Mathis*, 136 S. Ct. at 2251 ("[T]he elements of Mathis's crime of conviction (Iowa burglary) cover a greater swath of conduct than the elements of the relevant ACCA offense (generic burglary) … . Under our precedents, that undisputed disparity resolves this case."); *Gordon v. Barr*, 965 F.3d 252, 260 (4th Cir. 2020) ("[W]hen the state, through plain statutory language, has defined the reach of a state statute to include conduct that the federal offense does not, the categorical analysis is complete; there is no categorical match."). So we turn to the BIA's application of the modified categorical approach.

**D**

The BIA concluded that § 790.23(1)(a) is divisible with respect to the items that it prohibits felons from possessing or carrying in a concealed manner. In our view, the BIA was mistaken. Although it may sometimes be said that one man's means is another man's elements, this case is not one of those at the margins. The specified prohibited items for each of the two crimes proscribed by § 790.23(1)(a) are means, and not elements.

14

If the two offenses prescribed by § 790.23(1)(a) are themselves divisible, then the statute sets out seven or more separate possession crimes (one crime for possession of each of the five definitions of a firearm, plus one crime for possession of ammunition, plus one crime for possession of an electric weapon or device). *See, e.g., Guillen*, 910 F.3d at 1180 (explaining that, if divisible, a Florida narcotics statute would "effectively creat[e] a distinct offense for the possession of each [prohibited] substance"); *Donawa*, 735 F.3d at 1281 ("[T]he modified categorical approach is applied only when a single statute lists a number of alternative elements that effectively create several different crimes, some of which are aggravated felonies and some of which are not."). We say "or more" because the definition of electric weapon or device covers a potentially open-ended universe of items. *See* §§ 790.001(6), (14), (19).

And if the offenses are divisible, § 790.23(1)(a) would also set out six or more separate concealed carrying crimes (one crime for carrying in a concealed manner each of the four definitions of a concealed weapon, plus one crime for carrying in a concealed manner a tear gas gun, plus one crime for carrying in a concealed manner a chemical weapon or device). Again, we say "or more" because the combined definition of tear gas gun and chemical weapon or device also potentially covers an open-ended universe of items. *See* § 790.001(3)(a)-(b).

15

There is nothing in the text of § 790.23(1)(a) that suggests this is the way the statute operates. Indeed, the opposite seems true. As we have explained, Florida courts have held that § 790.23(1)(a) creates two offenses, not thirteen plus. *See James*, 16 So.3d at 326; *Williams*, 48 So.3d at 193-94; *Wiggins*, 253 So.3d at 1199.

It is also worth noting that the offenses prescribed by § 790.23(1)(a) are not punished differently depending on what prohibited item is possessed or carried in a concealed manner. *See* § 790.23(3)-(4). This uniform treatment of punishment further suggests that the prohibited items are not elements. "If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] they must be elements. Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Matthis*, 136 S. Ct. at 2256 (citations omitted).

Were there any remaining doubt about whether § 790.23(1)(a) is divisible with respect to its prohibited items, double jeopardy decisions by Florida courts put that doubt to rest. *See Guillen*, 910 F.3d at 1182-83 (reviewing Florida double jeopardy cases involving a Florida narcotics statute to determine whether the statute was divisible as to its prohibited substances). If the prohibited items in § 790.23(1)(a) are indeed elements, as the BIA concluded, then a person can be separately convicted for possessing several of those items at the same time because

16

possession of each item would constitute a distinct crime. But Florida courts do not permit such dual convictions.

Florida courts apply the "same elements" test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether multiple convictions violate double jeopardy. *See Lee v. State*, 258 So.3d 1297, 1301 (Fla. 2018) (explaining that the question under Fla. Stat. § 775.021(4)(b) is whether each offense contains an element not contained in the other). Using this test, every intermediate appellate court in Florida has held and/or recognized that multiple convictions and sentences under § 790.23(1)(a) for the simultaneous possession of different prohibited items violate double jeopardy. *See Hill v. State*, 711 So.2d 1221, 1224-25 (Fla. 1st DCA 1998) ("[W]e hold that the prohibition against double jeopardy precludes more than one conviction for the possession at the same time of multiple firearms by a convicted felon."); *Plowman v. State*, 622 So.2d 91, 92 (Fla. 2d DCA 1993) (holding that "three separate convictions [for three separate weapons, including stun guns], constitute a double jeopardy violation"); *Smith v. State*, 776 So.2d 957, 960 n.1 (Fla. 3d DCA 2000) ("[T]he state candidly concedes that if Smith had been apprehended while in possession of both firearms at the same time, only one count of possession of a firearm by a convicted felon could have been charged."); *Boyd v. State*, 17 So.3d 812, 818 (Fla. 4th DCA 2009) (holding that "dual convictions for possession of a firearm by a convicted felon and possession of ammunition by a convicted felon

17

violate double jeopardy"); *Francis v. State*, 41 So.3d 975, 975-76 (Fla. 5th DCA 2010) (holding that dual convictions for a felon's possession of a firearm and ammunition violate double jeopardy); *Bell v. State*, 122 So.3d 958, 959 (Fla. 2d DCA 2013) (holding that "convictions and sentences for one count of felon in possession of a firearm and one count of felon in possession of ammunition … violate double jeopardy"). Because Florida courts are the ultimate expositors of state law, *see Guillen*, 910 F.3d at 1182, we are bound by their uniform view that the prohibited items do not constitute elements that effectively create separate and distinct crimes.

Under *Mathis*, our divisibility inquiry ends here because the language and structure of § 790.23(1)(a) and Florida precedent have provided a clear answer. *See Mathis*, 136 S. Ct at 2256-57 ("And *if* state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself …. Suppose for example that one count of an indictment and correlative jury instructions …") (emphasis added); *United States v. Oliver*, 962 F.3d 1311, 1318 (11th Cir. 2020) ("And third, if the text of the statute and state decisional law are unclear, 'federal judges have another place to look: the record of a prior conviction itself.' For instance, the indictment and jury instructions… . ") (quoting *Mathis*, 136 S. Ct. at 2256). The BIA, having failed to identify the relevant Florida court decisions, incorrectly considered the jury instructions for § 790.23(1)(a). *See Simpson*, 2019 WL 2464457, at *3.

Even if we consider the jury instructions, however, our conclusion remains the same—the prohibited items in § 790.23(1)(a) are means and not elements. The jury instructions state that each of the enumerated offenses in the statute—possession and concealed carrying—contain "two elements," and then list the prohibited item as part of the second element (and not a separate element) for each of those offenses. *See* Fla. Stat. Std. Jury Instr. (Crim.) § 10.15 (West 2020).[4]

That listing, in and of itself, is no more indicative of the items being elements than it is of the items being means. For example, Florida courts have explained that the possession offense in § 790.23(1)(a) has two elements—one is the defendant's status as a felon, and the other is the defendant's possession of a prohibited item—and do not appear to view the item as an element separate from possession. *See Hines*

---

[4] The Florida standard instructions for § 790.23(1)(a) read in full as follows:

To prove the crime of (crime charged), the State must prove the following two elements beyond a reasonable doubt:

1.  (Defendant) had been convicted of a felony.

*Give 2a and/or 2b as applicable.*

2.  After the conviction, (defendant) knowingly

    a.  owned or had in [his] [her] care, custody, possession, or control [a firearm] [an electric weapon or device] [ammunition].

    b.  carried a concealed weapon.

*v. State*, 983 So.2d 721, 724 (Fla. 1st DCA 2008) ("The offense of possession of a firearm by a convicted felon consists of two elements: (1) prior conviction of a felony[,] and (2) knowingly owning or having a firearm [or other prohibited item] in one's care, custody, possession or control."); *State v. Maxwell*, 682 So.2d 83, 84 (Fla. 1996) (describing the elements of a possession offense under § 790.23(1) as the defendant (1) possessing a firearm (2) after previously being convicted of a felony). We cited *Hines* with approval as to the two statutory elements in *Jones v. Sec'y Dep't of Corr.*, 503 F. App'x 749, 750 (11th Cir. 2013).

In sum, the prohibited items for the possession and concealed carrying offenses in § 790.23(1)(a) are means of committing those crimes, and not elements of separate crimes. Accepting what the Florida courts have said, the statute's prohibited items constitute a list of "disjunctive factual scenarios rather than separate elements." *Mathis*, 136 S. Ct. at 2249. *See e.g.*, *United States v. Howard*, 742 F.3d 1334, 1348-49 (11th Cir. 2014) (holding that an Alabama burglary statute was indivisible because it defined "building" with a non-exhaustive list of examples, and under *Descamps* "illustrative examples are not alternative elements"); *Cabrera–Umanzor*, 728 F.3d at 353 (holding that a Maryland child abuse statute was indivisible under *Descamps* where the specific acts of sexual abuse or sexual exploitation of a minor listed "[we]re not elements of the offense, but serve[d] only

20

as a non-exhaustive list of various means by which the elements of sexual molestation or sexual exploitation can be committed").[5]

At the very least, the statutory text and the Florida law we have surveyed "do not 'speak plainly,'" and as a result we "must resolve the inquiry in favor of indivisibility." *Cintron*, 882 F.3d at 1385. Applying the categorical approach, we hold that Mr. Simpson's conviction for a violation of § 790.23(1)(a) does not constitute a firearm offense under § 1227(a)(2)(C) of the INA and its cross-reference to the definition of a firearm in § 921(a)(3).

## V

We grant Mr. Simpson's petition. The BIA's decision deeming Mr. Simpson removable under 8 U.S.C. § 1227(a)(2)(C) of the INA, based on his conviction for a violation of Fla. Stat. § 790.23(1)(a), is vacated.

**PETITION GRANTED.**

---

[5] The Supreme Court cited both *Howard* and *Cabrera-Umanzor* with approval in *Mathis*, 136 S. Ct. at 2256.