[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-12403

Non-Argument Calendar

————————————————

VICTOR VELOZ-MATOS,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-075-351

————————————————

Before WILSON, JORDAN, and LAGOA, Circuit Judges.

PER CURIAM:

Victor Veloz-Matos petitions for review of an order of the Board of Immigration Appeals dismissing his appeal of an order issued by an immigration judge denying his application for cancellation of removal.  Upon consideration, we deny Mr. Veloz-Matos' petition for review.

**I**

Mr. Veloz-Matos, a citizen and native of Mexico, entered the United States without inspection, admission, or parole sometime in 1994.  In July of 1995, he pled no contest to, and was found guilty of, possession of a controlled substance, in violation of Cal. Health & Safety Code § 11350(a) and driving under the influence, in violation of Cal. Veh. Code § 23152(a) & (b).  On December 6, 2017, the government initiated removal proceedings against him, citing as grounds for removal his lack of proper travel documents and his entry into the United States without admission or parole.

On January 19, 2017, Mr. Veloz-Matos appeared with counsel who requested that he be released on bond.  Counsel also told the immigration judge that there was a seemingly relevant arrest in California, and that he was trying to obtain the records for that arrest.  The immigration judge granted bond and adjourned the hearing.

On April 27, 2017, Mr. Veloz-Matos appeared again with counsel. At this appearance, he admitted the allegations in the notice to appear and conceded that he was subject to removal. He also, through counsel, submitted an application for cancellation of removal. The immigration judge then asked if Mr. Veloz-Matos had been convicted of any offenses that would make him ineligible for cancellation of removal. In response, counsel said that, although there was an old California case, the details of which he was investigating, he did not believe that case would affect Mr. Veloz-Matos' eligibility for cancellation of removal. The immigration judge granted a continuance to allow Mr. Veloz-Matos time to gather and submit relevant documents to support his application for cancellation of removal. The immigration judge also admitted the notice to appear as an exhibit at this hearing.

A few months later, the government submitted Mr. Veloz-Matos' conviction record, which showed that he pled no contest to, and was found guilty of, possession of a controlled substance under Cal. Health & Safety Code § 11350(a) in 1995. The conviction record did not specify what controlled substance formed the basis for the conviction.

At the next court appearance, on December 27, 2017, the government and Mr. Veloz-Matos agreed to another adjournment. Mr. Veloz-Matos' counsel told the immigration judge that he was looking into overturning the 1995 California conviction to aid the application for cancellation of removal.

On February 19, 2019, approximately fourteen months later, Mr. Veloz-Matos appeared before a different immigration judge. Mr. Veloz-Matos' case had been reassigned sometime after his December 2017 appearance.

At this hearing, the immigration judge admitted three additional documents as exhibits— Mr. Veloz-Matos' application for cancellation for removal, a police report that showed he had recently been a victim of an assault, and Mr. Veloz-Matos' 1995 conviction record, which the government submitted. The immigration judge asked counsel if he wished to add anything else to the record with respect to the 1995 California conviction. Counsel said he had no additional submissions. He explained, however, that although Mr. Veloz-Matos had been unable to find any documents or records that identified what controlled substance was at issue in the 1995 California conviction, it was Mr. Veloz-Matos' recollection that the controlled substance was "marijuana and not another drug."

The immigration judge then pretermitted and denied Mr. Veloz-Matos' application for cancellation of removal and ordered his removal to Mexico. In denying the application, the immigration judge concluded that Mr. Veloz-Matos had failed to meet his burden of showing that he had not been convicted of a disqualifying offense. The immigration judge also held that § 11350(a) is much broader than its federal counterpart—in that it covered several substances that are not controlled under federal law, but that the statute is divisible. In any event, the immigration judge

ultimately found that Mr. Veloz-Matos had not met his burden of showing that he was eligible for cancellation of removal. The immigration judge also acknowledged that the record was "not completely clear as to what the actual drug involved in that conviction [was]."

Mr. Veloz-Matos timely appealed the immigration judge's decision to the BIA. Although no briefs were filed, Mr. Veloz-Matos stated in his notice of appeal that the immigration judge "erred in pretermitting the case as there was no proof in the record to establish the [ ] guilt for the commission of an aggravated felony (drug offense)." A.R. at 9. Mr. Veloz-Matos also argued that the immigration judge should have conducted a "merits hearing." *Id.*

Finding no apparent error with the immigration judge's decision, the BIA, in a one-member order, affirmed and adopted the immigration judge's decision and dismissed Mr. Veloz-Matos' appeal. Mr. Veloz-Matos timely filed this petition for review.

## II

Our review of the BIA's legal conclusions is *de novo*. *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 860 (11th Cir. 2007). When the BIA issues a decision, we review only that decision. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). But when the BIA expressly adopts the immigration judge's decision or agrees with the immigration judge's reasoning, we review both decisions. *See id.*

### III

Under § 240A(b) of the Immigration & Nationality Act, 8 U.S.C. § 1229b(b)(1), the Attorney General has the discretionary authority to cancel the removal of an otherwise removable non-citizen where certain conditions are met.  To establish eligibility for cancellation of removal, an applicant like Mr. Veloz-Matos must demonstrate that (i) he has resided continuously in the United States for at least ten years immediately preceding the application; (ii) he has been a person of good moral character; (iii) he has not been convicted of an enumerated controlled substance offense; and (iv) his removal would result in exceptional and extremely unusual hardship to an immediate relative who is a United States citizen or a lawful permanent resident.  *See* 8 U.S.C. § 1229b(b)(1).  *See also Pereida v. Wilkinson*, 592 U.S. 224, 227–28 (2021).

It is Mr. Veloz-Matos' burden to establish eligibility "clearly and beyond doubt;" and at issue here is whether he met this burden with respect to showing that he has not been convicted of a controlled substance offense. *See Pereida*, 592 U.S. at 232.  We conclude that he has not met his burden.

### A

For purposes of § 1229b(b)(1), a controlled substance offense that will result in removal is limited to offenses that involve federally controlled substances.  Accordingly, a state controlled substance offense that involves a substance not federally controlled is not a disqualifying offense under § 1229b(b)(1)(C).

To determine when a state controlled substance offense carries immigration consequences such as removal, we "apply a categorical or modified categorical approach, depending on the statutory scheme" of the statute at issue. *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280 (11th Cir. 2013). Under the categorical approach, we look "not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding" crime. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." *Id.* (quotation marks omitted).

If, however, the statute of conviction is broader than the federal generic definition and "punishes some conduct that would satisfy the elements of a federal felony and some conduct that would not," we must determine if the statute is divisible. *Donawa*, 735 F.3d at 1280. A statute is divisible when it "lists a number of alternative elements that effectively create several different crimes." *Id.* at 1281. "Elements are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis v. United States*, 579 U.S. 500, 504 (2016) (some quotation marks omitted) (quoting Black's Law Dictionary 634 (10th ed. 2014)).

If the statute is divisible, we apply the "modified categorical approach." Under this approach, we look to certain materials, such as indictments and jury instructions, to determine which

alternative [elements] formed the basis of the defendant's prior conviction." *Descamps v. United States*, 570 U.S. 254, 257 (2013).

In deciding whether a statue is divisible, we look to the plain language of the statute and to the decisions of the governing jurisdiction. *See Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1385 (11th Cir. 2018). We may also review other sources like jury instructions and indictments. *See id.* If the statute is indivisible, we are bound by the initial determination that there is no categorical match, which means the conviction is not a controlled substance offense for purposes of the INA.

Here the relevant statute is § 11350(a) of the California Health & Safety Code, which criminalizes the possession of:

> any controlled substance specified in subdivision (b), (c), (e), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state.

Cal. Health & Safety Code § 11350(a).

The parties agree that § 11350(a) is not a categorical match for the federal definition of a controlled substance offense. Indeed, at the time of Mr. Veloz-Matos' conviction, § 11350(a) covered

substances such as Dimethylamphetamine, N-Ethylmethamphetamine, and chorionic gonadotropin, which were not controlled under federal law. *See* Cal. Health & Safety Code § 11350(a)(1991). The parties part ways, however, on what the legal consequence of this conclusion ought to be.

According to Mr. Veloz-Matos, the inquiry should end here because § 11350(a) is indivisible; and because this is the case, his conviction was not a controlled substance under the INA. The government, on the other hand, argues that we must apply the modified categorical approach because § 11350(a) is divisible. And, under this approach, the government further argues, Mr. Veloz-Matos is entitled to relief only if he can show that his conviction involved a substance not federally controlled, and he has failed to do so. As explained below, we agree with the government.

Although the plain text of § 11350(a) does not tell us whether the statute is divisible or not, California law unequivocally tells us that it is. California state courts have consistently upheld separate convictions and separate punishments for simultaneous possession of different controlled substances under § 11350 and its predecessor statutes. For example, in one case the defendant was charged with and convicted on three separate counts of possession of heroin, marijuana, and amidone, in violation of § 11350(a)'s predecessor statute. *See People v. Lopez*, 169 Cal. App. 2d 344, 345 (Cal. Ct. App. 1959). On appeal, the defendant argued that he "was punished three times for a single act." *Id.* at 350. The court unequivocally disagreed. It explained that the defendant was appropriately

charged and convicted because "the possession of each of the three different and distinct types of narcotics, even at the same time, constituted three separate offenses." *Id.* at 351.

Since *Lopez*, California courts have continued to hold that it is appropriate to impose multiple punishments for simultaneous possession of various controlled substances. *See, e.g., People v. Barger*, 40 Cal. App. 3d 662, 672 (Cal. Ct. App. 1974) ("California courts have uniformly held that [California law] does not preclude multiple punishment for simultaneous possession of various narcotic drugs."); *People v. Buchanan*, 248 Cal. App. 4th 603, 611 (Cal. Ct. App. 2016) (same); *People v. Hudson*, 244 Cal. App. 4th 1318, 1324 (Cal. Ct. App. 2016) (leaving undisturbed separate convictions for one count of possession of cocaine and one count of possession of heroin brought under § 11350(a)). *See also People v. Rouser*, 59 Cal. App. 4th 1065 (Cal. Ct. App. 1997) (noting that the defendant in *Lopez* was "separately convicted under Health and Safety Code [§] 11500 [now § 11350] for possession of heroin, of marijuana and of amidone").

In addition, the California Supreme Court has confirmed, albeit without directly deciding, the vitality of this principle. *See People v. Jones*, 278 P.3d 821, 827 (Cal. 2012) (emphasizing that it was not "cast[ing] doubt on the cases" holding that "simultaneous possession of different items of contraband are separate crimes" (quotations and citations omitted)).

Jury instructions also confirm our understanding. As the Ninth Circuit recently observed in an analogous case, *see Lazo v.*

*Wilkinson*, 989 F.3d 705, 713-14 (9th Cir. 2021), the relevant jury instructions require that the specific controlled substance must be identified, and for the jury to convict, "the jury must unanimously find that the defendant possessed that particular substance." *Lazo*, 989 F.3d at 713 (citing Jud. Council of Cal., Criminal Jury Instructions, No. 2304 (2020) and California Jury Instructions—Criminal, No. 12.00 (6th ed. 1996)).

Accordingly, we conclude that § 11350(a) is divisible because it effectively creates a different crime based on the identity of the controlled substance, and an offender may receive separate punishments for simultaneously possessing different controlled substance. Mr. Veloz-Matos has cited no authority in support of his contention that § 11350(a) is indivisible; nor has he explained why California law compels a different outcome.

**B**

Because we conclude that § 11350(a) is divisible, we next ask whether Mr. Veloz-Matos met his burden of showing that his 1995 California conviction was not for a disqualifying controlled substance offense. "[W]here . . . the alien bears the burden of proof and was convicted under a divisible statute containing some crimes that qualify as [disqualifying] crimes . . ., the alien must prove that his actual, historical offense of conviction isn't among them." *Pereida*, 592 U.S. at 236. This Mr. Veloz-Matos has failed to do.

The entirety of the evidentiary record below consisted of (i) the notice to appear; (ii) Mr. Veloz-Matos' application for cancellation of removal, which included tax and property records; (iii) an

arrest affidavit that showed that Mr. Veloz-Matos was recently a victim of an assault; and (iv) the 1995 California conviction record, which the government submitted.  Mr. Veloz-Matos submitted no evidence, not even a sworn statement, related to the 1995 California conviction.

The closest attempt at providing any evidence was Mr. Veloz-Matos' counsel's statement to the immigration judge that Mr. Veloz-Matos' recollection was that his conviction involved "marijuana and not another drug."  But this does not do much, if anything, for Mr. Veloz-Matos because a lawyer's unsworn statement is not considered evidence.  *See United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013).

Even if Mr. Veloz-Matos may have done his best to locate additional documents and was simply unable to, the Supreme Court has explained that "evidentiary gaps . . . work against the [noncitizen] seeking relief from a lawful removal order" even if the "record of conviction is unavailable or in-complete through no fault of his own."  *Pereida*, 592 U.S. at 240.

Because Mr. Veloz-Matos provided no evidence—much less evidence that is "clear[ ] and beyond doubt"—to show that he was not convicted of a disqualifying offense, he failed to meet his burden of proving his eligibility for cancellation of removal.  *See Pereida*, 592 U.S. at 232.  We therefore affirm the immigration judge's decision pretermitting and denying Mr. Veloz-Matos' application.

## C

We also reject Mr. Veloz-Matos' argument that he "was barred from applying for and presenting evidence in favor of his application for cancellation of removal" and that his due process rights were violated. Petitioner's Br. at 16. Mr. Veloz-Matos was granted continuances that spanned a little over two years to obtain additional documents or proof to show what controlled substance was involved in his conviction. He was therefore given ample time and opportunity to present favorable evidence.

## IV

We deny Mr. Veloz-Matos' petition for review.

**PETITION DENIED.**