Filed 5/9/22; Certified for Publication 6/6/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C092015 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR77535) |
| v. | |
| MANUAL VALDIVIAS SOTO, | |
| Defendant and Appellant. | |

Defendant Manuel Valdivias Soto is a noncitizen who moved to the United States as a teenager in the late 1980's to be with family and have children of his own.  He appeals from the trial court's denial of his 2020 motion to vacate his 2010 drug trafficking conviction, which subjects him to mandatory removal under federal immigration law.  Claiming he would have rejected the plea had he correctly understood its actual immigration consequences, defendant contends his conviction is invalid due to prejudicial error.  Agreeing, we reverse.

1

BACKGROUND

During a traffic stop in September 2009, police searched defendant and found 29.9 grams of methamphetamine in his breast pocket. According to the officer who arrested him, defendant stated he was to receive $200 for delivering the drugs on behalf of another person. A probation report noted defendant had never attended school, was illiterate in English and spoke it poorly, and was subject to an immigration hold as a noncitizen.

Defendant was charged with possession for sale of methamphetamine (Health & Saf. Code, § 11378), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), and driving without a license (Veh. Code, § 12500, subd. (a)). Pursuant to plea negotiations, defendant initialed and signed a waiver of rights and plea form, in which he indicated his understanding that, as a noncitizen, his plea "may cause my deportation, exclusion from admission to the United States and denial of citizenship or naturalization pursuant to the laws of the United States." He also initialed the following line on the form: "I read and understand the English language." Defendant's attorney signed an acknowledgement on the form stating, among other things, he had "explained the consequences of this plea" to his client. A Spanish interpreter signed an acknowledgement on the form stating she was duly sworn, had translated the form to defendant, and that defendant indicated he understood its contents.

During a plea colloquy in November 2009, the trial court and defendant had the following exchange:

> "THE COURT: Mr. Soto, I have a Waiver of Rights form that appears to have your initials and signature. [¶] Did the Interpreter read it to you?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Did you understand what she read to you?
>
> "THE DEFENDANT: Yes.

2

"THE COURT:  Sir, before I can accept this plea, you must give up your right to remain silent, your right to a trial by jury, your right at trial to see, hear, and ask questions of witnesses, present evidence, testify, and have the Court require the attendance of witnesses and require their testimony.  [¶] Do you understand all of these rights?

"THE DEFENDANT:  Yes.

"THE COURT:  Are you giving up all of these rights?

"THE DEFENDANT:  Whatever is necessary.

"THE COURT:  Sir, I need to know if you are giving up the rights that I just told you about.

"THE DEFENDANT:  Wait.  What do you mean by saying "waive"?

"THE COURT:  If you give them up, it means you will give up your right to remain silent, because when you plead guilty, you will do that out loud.  If you plead guilty –

"THE DEFENDANT:  I am guilty.

"THE COURT:  If you plead guilty, we won't have a trial.  You won't get to question the witnesses at that trial because we simply won't need to have a trial.

"THE DEFENDANT:  I am guilty.

"[Pause for a discussion between defense counsel and defendant.]

"[¶] . . . [¶]

"THE COURT:  Do you want or need any further time to speak with your attorney before you enter a plea?

"THE DEFENDANT:  That's all right.  Whatever.

"THE COURT:  Sir, I need to know if you need more time to talk to your attorney?

"THE DEFENDANT:  I don't think so.

"THE COURT: And right now is there anything that is affecting your ability to use good judgment or to think clearly?

"THE DEFENDANT: I am guilty of everything.

"THE COURT: Sir, I need to make sure that you are thinking clearly. Are you thinking clearly?

"THE DEFENDANT: Yes."

Defendant pleaded guilty to possession for sale of methamphetamine. The trial court found defendant "knows and understands the nature of the charge and consequences of his plea. His waiver is knowing, intelligent, express and explicit." Immigration consequences were not discussed.

Before sentencing, defendant informed the probation officer he did not want to be deported. At sentencing, defense counsel urged leniency, arguing "[b]ut for his status, his legal status, you know, more than likely he would be granted probation in a case like this." Noting defendant was on probation for misdemeanor possession of a loaded weapon in public (§ 12031, subd. (a)), the trial court sentenced him to two years in state prison and ordered him to register as a drug offender under Health and Safety Code section 11590.

In November 2017, the Department of Homeland Security detained defendant when he applied for admission for entry at San Luis, Arizona. Because his conviction is an "aggravated felony" under the federal Immigration and Nationality Act (8 U.S.C. § 1101 et seq.), defendant is subject to mandatory deportation and exclusion (8 U.S.C. §§ 1227, subd. (a)(2)(A)(iii), 1228, subd. (c)), and is ineligible for certain types of discretionary relief from removal "no matter how compelling his case" (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187 [185 L.Ed.2d 727]).

4

In January 2020, defendant sought to withdraw his plea under Penal Code section 1473.7,[1] which enables an out-of-custody defendant to file a motion to vacate a conviction upon showing by a preponderance of evidence the conviction is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty." (*Id.,* subd. (a)(1), see *id.,* subd. (e)(3).) Defendant's briefing asserted he did not meaningfully understand the immigration consequences of the plea due to the complexity of immigration law; he claimed it was unclear at the time whether possession for sale of methamphetamine would trigger mandatory deportation and exclusion under federal law. In support of the motion, defendant submitted a declaration stating, among other things: "I came to the United States in the late 1980s. I was with my sister. My father died in 1987 and my mother sent us to the United States because she was too old to take care of us. [¶] . . . At the time of my plea I was employed cutting trees in Tehema [*sic*] County. At that time, I had two U.S. citizen children ages nine and eleven and I was solely responsible for their support." Furthermore, "my family would have faced extreme hardship if I was forced to return to [Mexico]" and "I have nothing left in Mexico to go back to." Consequently, "[t]he right to remain in the United States was more important to me than any potential jail sentence." Because "I did not receive affirmative, and competent advice regarding the potential immigration consequences,' " "I did not understand that this conviction could become [a] deportable offense years after my plea and become disastrous from an immigration law perspective." Finally, "I would not have accepted this plea if I knew that this conviction could result in deportation."

---

[1] Undesignated statutory references are to the Penal Code.

In April 2020, the trial court denied his motion. Although the trial court was "not convinced that the filing [was] timely," it found that "possible immigration consequences [were] clearly stated in the waiver," which defendant had indicated he understood. The trial court rejected defendant's argument that the complexity of federal immigration law rendered him unable to understand its consequences, stating "more is required than a subjective decision as to the ability of one-given defendant to understand a complicated law." Furthermore, defendant's "repeated statements that he was guilty suggest that his predominant feeling was that he had no chance of winning at trial, no matter what his underlying concerns." Thus, defendant's "own words belie the current and self-serving contention that immigration consequences were all important to him."

## DISCUSSION

Defendant contends the trial court erred in dismissing his section 1473.7 motion. We agree.

### A

We begin with the question of timeliness, given that defendant's plea was in 2010. If the movant is no longer in custody, the section 1473.7 motion may be deemed untimely if it was not filed with reasonable diligence after the later of (1) movant's receipt of the notice to appear in immigration court, or (2) the issuance of a final removal order based on the conviction. (§ 1473.7, subd. (b); *People v. Perez* (2021) 67 Cal.App.5th 1008, 1016.) Here, the final removal order had not been issued, and there is authority for reversal under such a lengthy time frame. (See, e.g., *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 305 [finding of prejudicial error and order to vacate 2005 conviction for felony possession for sale of methamphetamine].)

### B

Section 1473.7 motions are subject to independent review. (*People v. Vivar* (2021) 11 Cal.5th 510, 527.) Where, as here, "the facts derive entirely from written declarations and other documents, . . . '[t]he trial court and this court are in the same

6

position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.]" (*Id*. at p. 528.) In such cases, "it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Ibid.*)

The trial court erred in concluding the generic advisement regarding the potential immigration consequences of the plea satisfied section 1473.7. "[T]he words 'may have' in a[n] . . . immigration advisement are not an adequate immigration advisement for defendants charged with serious controlled substance offenses." (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1065 [finding error in 1991 guilty plea to a drug offense where the defendant was advised of possible, rather than mandatory, immigration consequences].) In such cases, "[d]efendants must be advised that they *will* be deported, excluded, and denied naturalization as a *mandatory* consequence of the conviction." (*Ibid*., original italics; see *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1073, review granted Dec. 15, 2021, S271782.) Furthermore, as a result of recent amendments to section 1473.7, defendant did not have to prove counsel was ineffective in failing to advise him of the mandatory immigration consequences. (Stats. 2018, ch. 825, § 2; *People v. Ruiz,* at p. 1067 [the Legislature "intended to change the law to give defendants a new right to prevail using an easier new standard to retroactively challenge invalid prior convictions," italics omitted].)

Rather, " 'a person's own error in not understanding or knowingly accepting that a guilty plea will have certain and adverse immigration consequences may constitute prejudicial error entitling the person to relief under section 1473.7.' [Citations.]" (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 321 (*Rodriguez*).) Nothing in the record demonstrates, and the People do not argue, defendant meaningfully understood and knowingly accepted the mandatory immigration consequences of his plea. The plea form indicated only that there might be immigration consequences; there was no mention

during the plea colloquy of immigration consequences and no representations by defense counsel that they had provided such advisements.[2]

C

The People nevertheless argue defendant failed to show prejudice, noting that defendant knew he was guilty and had no defense to offer at trial.

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar, supra*, 11 Cal.5th at p. 529.) "A 'reasonable probability' 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' [Citation.]" (*People v. Hardy* (2021) 65 Cal.App.5th 312, 329, italics omitted; *Rodriguez, supra*, 68 Cal.App.5th at p. 324, italics omitted.) "When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*People v. Vivar,* at pp. 529-530.) Courts "have long required the defendant corroborate such assertions with ' "objective evidence." ' [Citation.]" (*Id.* at p. 530.) It is not necessary to show defendant could have obtained a more favorable outcome at trial. (*Rodriguez,* at pp. 311-312 [prejudice established if the defendant " 'would have risked going to trial . . . even if only to figuratively throw a "Hail Mary"].)

---

[2] Defendant additionally argues that the fact he did not have a Spanish interpreter throughout the proceedings prevented him from fully understanding the proceedings. Because defendant raises this issue for the first time on appeal, it is forfeited. "As a general rule, an appellant waives issues on appeal that he or she did not initially raise in the trial court. [Citation.]" (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381.)

8

The standard for determining the sufficiency of such corroborating evidence is an issue pending review. (*People v. Espinoza* (May 28, 2021, F079209) [nonpub. opn.], review granted Sept. 15, 2021, S269647.) In *Espinoza*, the Fifth District Court of Appeal concluded the defendant's declaration, without more, was insufficient to show immigration consequences were a paramount concern of his, even though he had lived in the United States for 20 years and his family was here. (*Ibid*.) By contrast, published appellate cases that bookend *Espinoza* establish a defendant's close ties to the United States may sufficiently corroborate his or her declarations. (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 771 [prejudice established where the defendant had lived in the United States since he was a preschooler, his entire family lived here, and he eventually married and raised children here]; *Rodriguez, supra*, 68 Cal.App.5th at pp. 324-325 [prejudice established where the defendant lived in the United States for decades since infancy, her immediate family and children lived here, she attended school here, and she lacked meaningful ties to her birth country]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 [compelling evidence of prejudice where the defendant had been living in the United States for eight years, since he was 14 years old, and his wife and infant son lived here, as well as his mother and six siblings]; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1011 [prejudice established because the defendant was "brought to the United States over 30 years ago at the age of two, has never left this country, and attended elementary, middle, and high school in Los Angeles County. . . . [and] is, and at the time of his plea was, married to a United States citizen with an American citizen son, and now also an American citizen daughter"].)

Here, we conclude that defendant's biographical history and contemporaneous communications sufficiently corroborate his claim that immigration consequences were, at the time of his plea, a paramount concern of his. Defendant had lived in the United States since he was a teenager in the late 1980's, his children and family lived here, and he was gainfully employed. Before sentencing, he specifically advised the probation

9

officer he did not want to be deported.  Evidence of defendant's desire to remain in the United States is substantial and uncontroverted.

Applying our independent judgment, we conclude, based on the totality of the circumstances, it is reasonably probable defendant would have rejected the plea had he correctly understood its actual immigration consequences.  Therefore, defendant established prejudice.

Accordingly, defendant has carried his burden and is entitled to relief.  (See *People v. Camacho, supra*, 32 Cal.App.5th at p. 1012 ["The appropriate remedy is to direct the trial court to grant the motion"].)

DISPOSITION

The order denying the section 1473.7 motion is reversed.  The matter is remanded to the superior court with directions to grant the motion and vacate the conviction.

        /S/
MAURO, J.


We concur:


    /S/
RAYE, P. J.


    /S/
HOCH, J.

Filed 6/6/22

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C092015 |
| v. | (Super. Ct. No. NCR77535) |
| MANUAL VALDIVIAS SOTO, | |
| Defendant and Appellant. | ORDER GRANTING REQUEST TO PUBLISH |

APPEAL from a judgment of the Superior Court of Tehama County, Richard Scheuler, Judge.  Reversed with directions.

Erin J. Radekin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on May 9, 2022, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


_____/S/_____
MAURO, Acting P. J.


_____/S/_____
HOCH, J.